UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAYLEE M., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 21-135JJM |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

A "younger individual" (only twenty when he[1] filed his disability application) who has never engaged in serious work,[2] Plaintiff Kaylee M. suffers from gender dysphoria and was transitioning from female to male during the period in issue. In addition to gender dysphoria, he claims to be disabled because of anxiety, depression, agoraphobia, Asperger's syndrome, attention deficit disorder ("ADD") and insomnia. He asks the Court to reverse the decision of the Acting Commissioner of Social Security (the "Commissioner"), denying his application for Supplemental Security Income ("SSI") pursuant to § 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff contends that the Administrative Law Judge ("ALJ") lacked substantial evidence to support (1) the Step Two determination that Asperger's syndrome is not a medically determinable impairment; and (2) the RFC[3] finding, which Plaintiff argues was improperly developed in reliance on incomplete testimony from a medical expert (a

---

[1] Plaintiff identifies as male. The Court will use male pronouns to refer to Plaintiff in this report and recommendation.

[2] Plaintiff briefly worked as an art tutor in 2016 and 2017, earning in total less than $300. Tr. 162

[3] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

psychiatrist, Dr. Carlos Jusino-Berrios) and without affording proper weight to the report of a consulting psychologist (Dr. Alexander Turchetta) or to the opinion of the treating social worker (Ms. Denise Crooks).  Defendant Kilolo Kijakazi ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision.

These motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128-131 (1st Cir. 1981).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Brown, at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

### B.     Step Two Determination

At Step Two, the ALJ evaluates the medical evidence to determine what are the claimant's "medically determinable impairments" and which of them are "severe." Vanessa C. v. Kijakazi, No. CV 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, ECF No. 21 (D.R.I. Nov. 2, 2021). A medically determinable impairment is not severe at Step Two if the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work. SSR 85-28 at *2, 1985 WL 56856 (Jan. 1, 1985). Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom., Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017). If there is error at Step Two, but the sequential analysis continues because of another severe impairment, the error is generally deemed harmless. White v. Colvin, No. C.A. 14-171S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015).

    C.    **Opinion Evidence**

For applications like this one, filed after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence. The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion – are gone. 20 C.F.R. § 416.920c(a). Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." Id. Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 416.920c. The most important factors to be considered are supportability and

4

consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 416.920c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization. See 20 C.F.R. § 416.920c(1)-(5). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." 82 Fed. Reg. at 5854.

    D.    **Evaluation of Claims of Mental Impairment**

The evaluation of a claim of disability based on mental illness requires use of a psychiatric review technique ("PRT") that assesses impairment in four work-related broad functional spheres: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). The ALJ uses a five-point rating scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). If the impairment causes no or "mild" difficulties in these areas, the ALJ generally will find that it is not severe. 20 C.F.R. § 416.920a(d)(1). On the other hand, if the diagnosed impairment causes marked limitations in at least two of the broad functional areas, the ALJ will find the "paragraph B criteria" necessary to establish that a Listing is equaled or met. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12:00(A)(2)(b) ("To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of

one, or 'marked' limitation of two, of the four areas of mental functioning."). The PRT is used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process and, if they are found to be severe, serves as the backdrop for the more detailed mental RFC assessment at Step Four. See, e.g., Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013); SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ must incorporate pertinent findings and conclusions based on the PRT into his decision and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. § 416.920a(e)(4); Carolyn Kubitschek & Jon Dubin, Social Security Disability Law & Procedure in Federal Court § 5:38 (2021 ed.).

  E. **Reliance on Experts**

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert. Santiago v. Sec. of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person."). If the medical evidence is such that a "reasonable mind might accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise. Sherry B. v. Saul, C.A. No. 20-140-JJM-PAS, 2021 WL 508517, at *2 (D.R.I. Feb. 11, 2021) (quoting Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)).

III. **Analysis**

  A. **Step Two – Asperger's Syndrome**

Plaintiff contends that the ALJ erred in finding at Step Two that the record lacks "evidence from an acceptable medical source in order to establish the existence of a medically

determinable impairment" as to Plaintiff's claim that he has suffered from the "impairment[] of autism spectrum disorder." See Tr. 14.  Plaintiff's supporting argument asks the Court to focus on the well-established proposition that, "[i]f you're autistic, you're autistic your whole life," as well as that Asperger's syndrome "may be difficult to diagnose." ECF No. 14 at 6, 7.  He asserts without foundation that, "[i]n this case, the Plaintiff has been diagnosed with all these since childhood."[4]  Id. at 8 (emphasis supplied).  However, with no evidence of an actual diagnosis of Asperger's syndrome at any time during Plaintiff's "whole life," the Commissioner is right that this argument appears to amount to a request that the Court improperly reweigh the evidence by making its own comparison of the diagnostic criteria for Asperger's syndrome and Plaintiff's reported symptoms.  See Colon, 877 F.2d at 153 ("district court simply has no authority to reweigh the evidence and substitute its judgment for that of the Secretary").

The medical records admitted in evidence certainly reflect that Plaintiff believes that he has autism and that he has repeatedly claimed that he was diagnosed in the past with Asperger's syndrome. E.g., Tr. 253 ("Past medical/surgical history Reported: . . . Asbergers [sic]"); Tr. 263 ("hx of Asbergers [sic] mild"); Tr. 335 ("has felt like he has an autism spectrum disorder"); Tr. 339 ("reports having autism spectrum diagnosis"); Tr. 349 ("alleges a history of . . . Asperger's Syndrome by history").  However, Plaintiff's childhood records reflect only that he was not diagnosed with autism spectrum disorder – indeed, at age eight, a psychiatrist noted, "[s]he does not have any concerning features of ASD [autism spectrum disorder] but is not quite neurotypical. . . . I do not think she needs psychiatric medication at this time." Tr. 240 (emphasis

---

[4] Plaintiff's articulation of this argument is confusing – that is, it is unclear whether by "all these" he means that Asperger's syndrome was diagnosed in childhood.  Or does he mean only that attention deficit hyperactivity disorder, obsessive compulsive disorder and oppositional defiant disorder were diagnosed in childhood, but that these diagnoses reflect confusion by childhood medical providers, who should have diagnosed Asperger's syndrome?  With no record citation reflecting a childhood diagnosis of Asperger's syndrome, the Court need not struggle with this confusion – what matters is that this record is utterly devoid of an actual diagnosis of Asperger's syndrome.

supplied); Tr. 235-39, 241, 250, 255.  The Court's scouring of the record confirms that neither in the childhood records, nor in the records from the period in issue, is there anything reflecting a medical provider making or endorsing a diagnosis of Asperger's syndrome.

The ALJ's finding that Asperger's syndrome is not established as a medically determinable impairment is well supported by these records.  It is also supported by the administrative finding at the initial phase of the expert psychiatrist, Dr. Susan Killenberg, which was confirmed at the reconsideration phase by an expert psychologist, Dr. Jeffrey Hughes.  Tr. 50 ("MER does not show convincing evidence of Asperger's"); Tr. 57-58 (claimant's "Adult Medically Determination Impairments (MDI)" do not include autism spectrum disorder).  Even the treating notes of Plaintiff's social worker, Ms. Crooks,[5] support the ALJ's finding, in that she consistently listed Plaintiff's diagnoses as generalized anxiety disorder, sometimes post-traumatic stress disorder, depression and gender dysphoria, despite having been told by Plaintiff that he had been diagnosed in the past with Asperger's.  E.g., Tr. 339-40 (at intake, "Pt. reports having an autism spectrum diagnosis"; diagnoses "Generalized anxiety disorder," "Post-traumatic stress disorder" and "Gender dysphoria"); Tr. 387 (treatment focused on anxiety and gender affirmance; diagnoses: "Generalized anxiety disorder" and "Depression, unspecified depression type").  And Ms. Crooks' RFC opinion, on which Plaintiff heavily relies, is further support in that it lists his diagnoses as anxiety and gender dysphoria; she does not mention Asperger's syndrome.  Tr. 458.

---

[5] As a social worker, Ms. Crooks is not an "acceptable medical source," and therefore lacked the capacity herself to diagnose Asperger's syndrome for Social Security purposes.  20 C.F.R. § 416.902(a).  However, she was a longitudinal treating source for Plaintiff and worked at Thundermist with other treating providers who could have made the Asperger's diagnosis but did not.

The ALJ's Asperger's syndrome finding is also supported by the testimony of the medical expert, Dr. Carlos Jusino-Berrios.[6] However, this testimony is confusing as transcribed in that Dr. Jusino-Berrios stated: "there are mentions of eating disorder, autistic disorder, and gender disorder. However, those diagnoses – two of them are not supported by the evidence." Tr. 41. In light of the obviousness of Plaintiff's gender dysphoria (which the ALJ found to be a severe medically determinable impairment), it does not appear that any confusion was apparent to those who heard this statement at the hearing. Specifically, Plaintiff's counsel was present and heard this testimony, was afforded the opportunity to ask clarifying questions and declined to do so. Further, in his motion for remand,[7] Plaintiff does not argue that this aspect of Dr. Jusino-Berrios' testimony either is ambiguous or does not support the ALJ's finding that the "impartial medical expert addressed these conditions and testified that the medical evidence does not support a finding that these are medically determinable impairments." Tr. 14. Rather, Plaintiff contends only the medical expert did not give "sufficient testimony to discount a lifelong condition." ECF No. 14 at 9. Despite the apparent confusion, I find that Dr. Jusino-Berrios' meaning was clear and there is no error in the ALJ's reliance on him as additional support for his Asperger's syndrome finding. I further find that, if there were error, Plaintiff has

---

[6] Plaintiff's unavailing challenge to the ALJ's reliance on Dr. Carlos Jusino-Berrios as "incomplete and unreliable," ECF No. 14 at 5, is discussed *infra*.

[7] As noted, Plaintiff's opening brief does not mention this issue. However, the Commissioner's brief in support of his motion to affirm does discuss the seeming confusion and argues (effectively) that this testimony was clear as heard and understood by both the ALJ and Plaintiff's counsel in that gender dysphoria is plainly well-established, while Asperger's syndrome and eating disorder are not. ECF No. 16-1 at 18. Plaintiff seizes on this discussion in his reply, arguing for the first time that the confusion supports his contention that remand is required because the medical expert failed to provide reasoning and support for his testimony. ECF No. 18 at 1. This argument succumbs to the well-settled principle that issues raised for the first time on reply are waived. Lisa M. v. Kijakazi, No. 1:20-CV-00471-MSM-PAS, 2022 WL 951618, at *2 (D.R.I. Mar. 30, 2022) ("[I]t is well-settled that 'a legal argument made for the first time in a[ ] [party's] reply brief comes too late and need not be addressed.'") (quoting United States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993)).

waived it, as well as that any such error would be deemed harmless in light of the sheer quantum of other supportive evidence on which the ALJ relied.

Based on the foregoing, I find that the ALJ's Step Two determination regarding Asperger's syndrome is amply supported by substantial evidence. It is also consistent with the applicable regulatory requirements, including that an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . established by objective medical evidence from an acceptable medical source," as well as that the Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921. Further, if there were error (which I do not find) at Step Two, because the ALJ continued the analysis of Plaintiff's mental health symptoms at subsequent stages of the five-step sequence, any such error must be deemed harmless. White, 2015 WL 5012614, at *8; Syms v. Astrue, Civil No. 10-cv-499-JD, 2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011). I recommend that the Court affirm the ALJ's Step Two finding that Asperger's syndrome is not a medically determinable impairment.

      **B.**     **RFC – ALJ's Approach to Conflicts in Medical Evidence**

The ALJ's RFC is based on his finding that Plaintiff suffers from moderate mental impairments, which impact each of the four PRT spheres and result in significant functional limitations, but do not preclude all work. To reach this finding, the ALJ relied on his own survey of the evidence, as well as on the administrative findings of Dr. Killenberg and Dr. Hughes (the non-examining experts) and on the testimonial opinion of Dr. Jusino-Berrios, which the ALJ found to be persuasive. Tr. 19. All of these experts concluded that Plaintiff's mental functional limitations are moderate. Tr. 50, 52-53.

The ALJ considered, but found unpersuasive the report of Dr. Turchetta, who opined (seemingly inconsistently) that, overall, Plaintiff's "mental health difficulties" are moderate, but also found "marked" limitations in the abilities to sustain attention, concentration and focus, to persist at tasks and to respond to normal work pressures, and "marked" limitations on the ability to respond to supervision and co-workers. Tr. 352. The ALJ also considered, but found to have little probative value, the RFC opinion supplied by Ms. Crooks, the treating social worker who provided individual therapy; Ms. Crooks opined that Plaintiff's anxiety was too severe to permit any work. The ALJ rejected her opinion because it clashes with Ms. Crooks' own treating notes, as well as with those of the other mental health providers at Thundermist and with the opinion of the testifying medical expert. Tr. 458-63. Plaintiff challenges these determinations as error, arguing that the ALJ did not resolve the ambiguity between the marked limitations opined to by the treating social worker and the consulting psychologist, as compared to the medical expert's testimony. Citing the now abrogated version of 20 C.F.R. § 404.1527(c),[8] he contends that the ALJ failed to perform the "good reasons" analysis required to support the conclusion that Ms. Crooks' opinion was not entitled to "controlling weight." ECF No. 14 at 6. He further challenges the ALJ's reliance on Dr. Jusino-Berrios based on his contention that the testimony is incomplete and unreliable.

Regarding Dr. Turchetta, the Court need not linger long. The ALJ's conclusion – that Dr. Turchetta's finding of "marked" limitations in two functional spheres is not consistent with Dr. Turchetta's "own examination findings . . . and with the treatment record as a whole," Tr. 19 – is supported not just by the Turchetta report itself, as compared to the record, but also by the expert

---

[8] This citation is not just inapplicable to this claim, which was filed well after March 27, 2017, but also is in error because the cited regulation applies to claims for disability insurance benefits. For an SSI claim, which is what Plaintiff has asserted, the applicable regulation is 20 C.F.R. § 416.927(c).

analysis of the Turchetta report performed by the non-examining psychiatrist, Dr. Killenberg. As Dr. Killenberg states in her unchallenged administrative finding, the "Dr. Turchetta . . . opinion . . . that claimant has marked impairments . . . is not consistent with or supported by 1) the claimant's report of daily functioning in the function report, 2) the MSE that Dr. Turchetta provides, or 3) the evidence in file from Thundermist treatment sources." Tr. 50. Nor is there any error in the ALJ's reliance on the testimony of Dr. Jusino-Berrios as further support for this finding.[9] See Tr. 41 (opining that claimant's "B criteria" limitations are "moderate" in all spheres).

The ALJ's treatment of Ms. Crooks' opinion is similarly well-supported.[10] Correctly noting that, as a social worker, Ms. Crooks is not an "[a]cceptable medical source" as defined in 20 C.F.R. § 416.902(a), the ALJ found her opinion to be of little probative value because its significant limitations are inconsistent with Ms. Crooks' own treating records, as well as with the many mental status evaluations and clinical observations in the record from the other mental health treating sources at Thundermist, specifically the mental health nurse practitioner, Nurse Alexandra Chabot, and the group therapist, Mr. Andrew Lewandowski. Tr. 20. To illustrate, the ALJ accurately noted that Plaintiff consistently presented as appropriately groomed with appropriate eye contact, cooperative behavior, articulate speech, focused attention, and intact memory, with fluctuating mood, generally (but not always) anxious; in addition, these providers made observations regarding Plaintiff's social skills such as his ability to sustain the "relationship with his current boyfriend since June 2018" and "develop friendships." Tr. 20

---

[9] For the reasons set out *infra*, I do not credit Plaintiff's argument that this testimony does not amount to substantial evidence.

[10] The Court must disregard Plaintiff's "controlling weight" argument with respect to Ms. Crooks. That abandoned rubric is derived from the standard applicable to disability applications filed prior to March 27, 2017; further, even when applicable, this standard did not apply to the opinion of a provider who is not an "acceptable medical source," like a social worker. 20 C.F.R. §§ 416.927(c), 416.902(a).

(citing references); e.g., Tr. 287, 368-69, 478-79, 501.  Indeed, far from reflecting that she had concluded that Plaintiff lacked the ability to work, Ms. Crooks' treatment plan generally includes "support patient in job hunting."  E.g., Tr. 277, 377; see Tr. 322 (Ms. Crooks notes that patient, "[w]ould like to be employed but is having trouble finding a job that he can walk to").  And the ALJ's assessment of Ms. Crooks' treating notes is supported by Dr. Killenberg's unchallenged finding that Ms. Crooks' clinical observations are consistent with "moderate" limitations.  See Tr. 50.  There is no error in the ALJ's approach to the Crooks opinion.

Regarding the testifying medical expert, psychiatrist Dr. Jusino-Berrios, Plaintiff attacks his testimony as "incomplete and unreliable" and therefore not substantial evidence to support the RFC.  ECF No. 14 at 5.  Plaintiff bases his argument on the guiding principles set out in Section I-2-6-70[11] ("Testimony of a Medical Expert") of the Social Security Administration's Hearings, Appeals, and Litigation Manual ("HALLEX").  See HALLEX I-2-6-70 (S.S.A.), 1993 WL 751901.

HALLEX is a source that does not carry the force and effect of law.  Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003).  The only case in this Circuit that addresses how courts

---

[11] As pertinent here, Section I-2-6-70 of HALLEX provides:

All ME testimony must be on the record. After administering the oath or affirmation, the ALJ must:

- Ask the ME to confirm his or her impartiality, expertise, and professional qualifications;
- Verify the ME has examined all medical and other relevant evidence of record;
- Ask the claimant and the representative whether they have any objections to the ME testifying; and
- Rule on any objection(s). The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision.

. . . .

The ALJ will also ensure the following during questioning of the ME:

- If the ME's replies are ambiguous or overly technical, the ALJ will follow up with more specific questions in order to obtain a response that is understandable to the average person.

HALLEX I-2-6-70 (S.S.A.), 1993 WL 751901.

should deal with HALLEX noted in *dicta* that an ALJ's failure to follow HALLEX procedures might be the basis for remand if the claimant "shows that she was prejudiced by the agency's failure to follow a particular rule set forth in HALLEX." E.E.P. ex rel. Palmer v. Barnhart, No. 03-246-P-C, 2004 WL 1529262, at *2 (D. Me. June 24, 2004). Those Circuits that have tackled the issue directly have differed on how to treat an ALJ's failure to follow a HALLEX guideline. Compare Palmer v. Comm'r of Soc. Sec. Admin., No. CV-20-08265-PCT-SPL, 2021 WL 5232336, at *3 (D. Ariz. Nov. 10, 2021) (HALLEX manual "does not prescribe substantive rules and therefore does not carry the force and effect of law"), with Bickham v. Saul, Civil No. 2:19-cv-02134-PKH-MEF, 2020 WL 4810966, at *2 n.1 (W.D. Ark. Aug. 3, 2020), adopted, 2020 WL 4809455 (W.D. Ark. Aug. 18, 2020) (holding that HALLEX is not binding on court, but noting that "courts differ on the effect of the HALLEX," with Ninth Circuit holding that it has no effect, and Fifth Circuit permitting reliance on it if claimant can affirmatively show prejudice).

Assuming without deciding that this Court would adopt the claimant-friendly approach to HALLEX that is applied in the Fifth Circuit, Plaintiff's HALLEX-based challenge to the ALJ's RFC finding is unavailing. For starters, while a little sloppy and somewhat truncated,[12] the ALJ's approach to the examination of Dr. Jusino-Berrios is largely (though not entirely) consistent with HALLEX in that Dr. Jusino-Berrios' impressive credentials as a psychiatrist are in evidence and were available to Plaintiff's counsel, who declined to ask questions about them; as Plaintiff concedes, the ALJ arguably addressed Dr. Jusino-Berrios's impartiality by asking, "[c]an you testify with a reasonable degree of medical certainty what the diagnoses would be?";

---

[12] Specifically, by comparison to the HALLEX requirements, the ALJ stumbled in that he omitted expressly to ask Dr. Jusino-Berrios to confirm his impartiality and that he had reviewed all of the medical portion of the record; in addition, he did not specifically ask if Plaintiff had an objection to Dr. Jusino-Berrios testifying. However, at the beginning of the hearing, Dr. Jusino-Berrios was introduced and Plaintiff's counsel was asked if he objected to the admission of exhibits and whether he had any questions about the proceeding. Tr. 29-30. The attorney advised that there was no objection to the exhibits (including Dr. Jusino-Berrios' curriculum vitae, Exhibit 8F) and that he had no questions about the proceeding. Id.

Dr. Jusino-Berrios confirmed that he had access to "the F," which is the medical portion of the record; and Plaintiff made no objections that called for ALJ rulings. Tr. 39-42. Plaintiff's second contention – that the ALJ violated HALLEX because Dr. Jusino-Berrios' answers to the PRT questions were ambiguous yet the ALJ failed to follow up – is simply wrong. Dr. Jusino-Berrios' responses regarding the severity of Plaintiff's limitations in the four PRT spheres, on which the ALJ relied for his RFC, are not ambiguous; to the contrary, they are crisp, succinct and clear.[13] Further, HALLEX does not require the ALJ to ask a medical expert to supply "reasoning or citations to the record to support such opinions," as Plaintiff contends, ECF No. 14 at 5. I find no error in the ALJ's failure to ask for such amplification of his answers where Plaintiff's counsel was afforded an opportunity to cross examine, which he declined. Third and most importantly, Plaintiff has demonstrated no prejudice flowing from the ALJ's minor deviations from the HALLEX principles for taking testimony from a medical expert. Based on the foregoing, I find that the Jusino-Berrios testimony regarding the severity of Plaintiff's symptoms is substantial evidence on which the ALJ appropriately relied.

Plaintiff's final RFC argument rests on Soto v. Secretary of Health and Human Services, 795 F.2d 219 (1st Cir. 1986) – he contends that the ALJ failed appropriately to resolve conflicts in the medical evidence. This contention founders on the reality that the ALJ complied with Soto by calling Dr. Jusino-Berrios as a medical expert to provide his opinion on the severity of Plaintiff's limitations. With this expert assistance, the ALJ was able to and did resolve conflicting and inconsistent medical evidence, ultimately adopting an RFC based on the findings of both non-examining experts that all limitations are "moderate," and rejecting the inconsistent finding of Dr. Turchetta who found two areas of "marked" limitations and the inconsistent

---

[13] This clarity contrasts with Dr. Jusino-Berrios' arguably confusing answer about what are Plaintiff's diagnoses. As noted *supra*, I nevertheless find no error in the ALJ's reliance on this answer. See n.7 *supra*.

opinion of Ms. Crooks that Plaintiff had no useful ability to function with respect, for example, to the ability to "make simple work-related decisions," Tr. 460. This simply is not a case like Soto, where the court was left to "sort out a record that admits of conflicting interpretations." 795 F.2d at 222.

Based on the foregoing, I find that the ALJ's RFC finding is well-supported by substantial evidence. Finding no error, I recommend that it be affirmed.

## IV. Conclusion

I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED, and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 16) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 28, 2022